IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | NO. 10-219 |
| RAPHEAL F. MCNAMARA-HARVEY | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                                                                                       **October 5, 2010**

Defendant Rapheal F. McNamara-Harvey moves to suppress evidence seized during a search of a "Hewlett Packard (HP) Pavilion Entertainment PC (Special Edition) laptop computer, model Pavilion dv4-1275mx, s/n CND91130CZ" (the Laptop), conducted pursuant to a search warrant. For the reasons set forth below, the motion will be denied.

**FACTS**

The Laptop was recovered from a GlaxoSmithKline (GSK) parking garage in Philadelphia, Pennsylvania, where GSK security personnel found McNamara-Harvey sleeping on December 30, 2009. After security personnel called the Philadelphia Police Department, McNamara-Harvey fled the garage, leaving the Laptop and other belongings behind. Officers of the FBI Joint Terrorism Task Force thereafter transported the recovered items, including the Laptop, and stored them with the evidence custodian. On January 13, 2010, United States Magistrate Judge Carol Sandra Moore Wells issued a search warrant, authorizing the Government to seize the Laptop and to search the Laptop for and seize nine categories of records.

In support of the search warrant, the Government submitted the Affidavit of David O'Brien, a Special Agent with the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). The Affidavit recited that on December 30, 2009, GSK security personnel encountered McNamara-

Harvey, who appeared to be homeless, sleeping in a GSK garage, which was closed at the time because it was a holiday. GSK security personnel obtained McNamara-Harvey's Pennsylvania identification card and called the Philadelphia Police Department, but McNamara-Harvey fled with one of his bags before police officers arrived. He left behind several other bags containing clothes, personal care items, pro-Palestinian/anti-Israeli literature, and the Laptop. The police searched the area where McNamara-Harvey had been located, which was near an exterior backup generator for the garage, and found what the officers believed to be an improvised incendiary device (the Device). The Device consisted of a glass beer bottle with a grey/black material on the top and a shoe-string-type wick and smelled of gasoline. The Device was later tested at an ATF laboratory and found to contain gasoline and polystyrene, a mixture commonly known as "improvised napalm." O'Brien Aff. ¶ 11. In the Affidavit, Special Agent O'Brien stated he believed, based on his training and experience, the Device was a "destructive device," as defined in 26 U.S.C. § 5845(f). *Id.* ¶ 11. GSK security personnel gave ATF a copy of GSK video surveillance of the garage, which showed McNamara-Harvey using the Laptop and "carrying a 12 ounce beer bottle, consistent with the type the improvised incendiary device was made of." *Id.* ¶ 12.

The Affidavit explained further investigation of McNamara-Harvey revealed he was the subject of a tip from a concerned citizen. On December 12, 2009, the citizen told the FBI that "Raphael al-Sammouni McNamara" was posting increasingly radical pro-Palestinian/anti-Israeli messages and videos on his Facebook page, had claimed he wanted to hold protests in Philadelphia and start a riot, and had posted a message stating he quit his job for "the cause." *Id.* ¶ 8. The Affidavit also stated FBI agents interviewed a source familiar with McNamara-Harvey on December 10, 2009, who stated McNamara-Harvey was attempting to obtain a passport so he could travel to

2

Yemen and/or Palestine to study Islam. Finally, the Affidavit stated McNamara-Harvey acknowledged during a December 23, 2009, interview with the FBI that he used Facebook and posted content on his Facebook page which some people would find disturbing and/or extremist in nature, although he claimed his postings were not meant to incite violence but to provoke thought and dialogue.

After reciting these background facts, the Affidavit explained in general terms the Government's need to examine all stored data on a computer to determine whether such data is included in the scope of a warrant, explaining that computer users wishing to conceal criminal evidence often store such evidence in random order or with deceptive file names. The Affidavit also explained the need to conduct searches of a computer's files in the controlled environment of a laboratory and outlined a number of search techniques which might be used in searching the Laptop.

Finally, the Affidavit set forth Special Agent O'Brien's conclusion there was probable cause to believe the Laptop contained evidence of the commission of four specified offenses: (1) use of an instrument of interstate commerce to make a threat or maliciously convey false information concerning an attempt to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive, in violation of 18 U.S.C. § 844(e); (2) travel in interstate or foreign commerce or use of a facility of interstate or foreign commerce with intent to incite, organize, promote, encourage, participate in, or carry on a riot or to commit an act of violence in furtherance of a riot, in violation of 18 U.S.C. § 2101; (3) convicted felon in possession of a firearm, including a destructive device, in violation of 18 U.S.C. § 922(g); and (4) possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d). The particular evidence the Government sought authorization to search the Laptop for and seize was set

forth in Attachment A to the Affidavit, which was incorporated into the search warrant issued on January 13, 2010.

**DISCUSSION**

The Fourth Amendment requires particularity in search warrants, providing "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment "does not prohibit searches for long lists of documents or other items provided that there is probable cause for each item on the list and that each item is particularly described." *United States v. Ninety-two Thousand Four Hundred Twenty-two Dollars & Fifty-seven Cents ($92,422.57)*, 307 F.3d 137, 148 (3d Cir. 2002). By requiring all warrants to contain a particular description of the things to be seized, however, the Fourth Amendment prohibits general warrants, or warrants which "authorize[] 'a general exploratory rummaging in a person's belongings.'" *United States v. Christine*, 687 F.2d 749, 752 (3d Cir. 1982) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). A warrant will be invalidated as a general warrant where the warrant "vest[s] the executing officers with unbridled discretion to conduct an exploratory rummaging through [a defendant's] papers in search of criminal evidence." *Id.* at 753.

The Third Circuit has distinguished general warrants from warrants which are "simply overly broad." *$92,422.57*, 307 F.3d at 149. "An overly broad warrant 'describe[s] in both specific and inclusive generic terms what is to be seized,' but it authorizes the seizure of items as to which there is no probable cause." *Id.* (quoting *Christine*, 687 F.2d at 753-54). Unlike evidence seized pursuant to a general warrant, which must be suppressed, *United States v. Yusuf*, 461 F.3d 374, 393 n.19 (3d Cir. 2006), evidence seized pursuant to an overly broad warrant need not be suppressed if the good

4

faith exception of *United States v. Leon*, 468 U.S. 897 (1984), applies. *$92,422.57*, 307 F.3d at 149. Under the good faith exception, evidence obtained by officers executing a search in objectively reasonable reliance on a warrant's authority need not be suppressed, even if the warrant is ultimately determined to be unsupported by probable cause, unless: (1) the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function; (3) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant was so facially deficient it failed to particularize the place to be searched or the things to be seized. *United States v. Hodge*, 246 F.3d 301, 307-08 (3d Cir. 2001) (internal quotation marks and citations omitted).

McNamara-Harvey argues the search of his computer violated the Fourth Amendment because the search warrant lacked sufficient particularity and therefore constituted a general warrant and the affidavit submitted in support of the search warrant failed to establish probable cause as to each item the Government sought to seize. The Government responds the search warrant was not a general warrant but a specific and particularized authorization to search the Laptop for certain materials which could be evidence of specifically enumerated offenses. The Government further argues O'Brien's Affidavit establishes at least a fair probability evidence of the specifically enumerated offenses would be found on the Laptop, and even if did not, the officers' reliance on the search warrant was objectively reasonable and the good faith exception therefore applies.

The search warrant in this case authorized the Government to search the Laptop for, and seize, nine categories of files specified in Attachment A, which the warrant specifically

5

incorporated.[1] Each of the nine paragraphs of Attachment A limited the types of records which could be searched for and seized by specifying the subjects to which the records had to pertain in order to be seized. These limitations in effect required the records seized to pertain to one of the offenses listed in the warrant; to GSK, the potential victim of a crime by McNamara-Harvey; to other accounts or storage devices or locations which could have been used by McNamara-Harvey to commit the crimes listed in the warrant or which could contain evidence of such crimes; and to the user or owner of the Laptop. Given such limitations, the search warrant did not "vest the executing officers with unbridled discretion to conduct an exploratory rummaging through [McNamara-Harvey's] papers in search of criminal evidence." *Christine*, 687 F.2d at 751, 753 (holding search warrant which authorized law enforcement officers to search the defendants' offices and seize, *inter alia*, "all folders and all documents contained therein and all other documents relating to home improvements and home improvement contracts" and "all other documents, papers, instrumentalities and fruits of the crime of submission of false statements" was not a general warrant); *see also Yusuf*, 461 F.3d at 395 (concluding search warrants did not violate the particularity requirement where such

---

[1] For example, the first paragraph of Attachment A authorized a search for, and seizure of, "notes, documents, records, or correspondence, in any format and medium including envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes" to the extent such records pertained to communications "meant to incite or pertaining to any intention to commit violence or damage to federally owned property, property owned by foreign countries, or properties related to interstate commerce, regardless of its location." Attachment A ¶ 1. Paragraphs two through five of the Attachment contained similar limitations requiring seized records to pertain to one of the offenses listed in the warrant. Paragraphs six and seven of Attachment A authorized seizure of "records, documents, invoices and materials, in any format or medium" concerning "accounts with an Internet Service Provider" and "online storage and or other remote computer storage," respectively. *Id.* ¶¶ 6-7. Paragraph eight authorized seizure of "records, documents, invoices and materials, in any format or medium," pertaining to "documents, communications, or other property, including intellectual property, belonging to [GSK]," and paragraph nine sought "records, documents, or photographs indicating the identity of the user or owner of the computer." *Id.* ¶¶ 8-9.

warrants were limited in three respects, including specifying agents were searching for evidence of several enumerated federal crimes). This Court therefore concludes the search warrant in this case was not a general warrant.

McNamara-Harvey criticizes the "boilerplate language" used in the Affidavit to justify searching the entire contents of the Laptop, arguing the Government should have provided information specific to his particular Laptop which would show the necessity for a search of the entire system. However, in *United States v. Comprehensive Drug Testing, Inc.*, Nos. 05-10067, 05-15006, 05-55354, 2010 WL 3529247, at *3 (9th Cir. Sept. 13, 2010), the case McNamara-Harvey cites for this proposition, the Ninth Circuit noted the government had made a "strong case" for off-site examination and segregation of computer records "by explaining the generic hazards of retrieving data that are stored electronically," such as the hazard computer files might be disguised with misleading names or false extensions and the hazard the data might be erased or hidden. While a concurring opinion in the case suggested the government should "fairly disclose the *actual* degree of such risks in the case presented," in addition to describing the theoretical risks of concealment and destruction of evidence, *see id.* at *14 (Kozinski, C.J., concurring), the majority opinion did not impose such a requirement.[2] Moreover, in *$92,422.57*, the Third Circuit upheld a search warrant authorizing a search for, and seizure of, "[c]omputers, computer peripherals, related instruction

---

[2] In *Comprehensive Drug Testing*, a magistrate judge granted the government broad authority to seize computer data but imposed certain procedural safeguards, including a requirement the government examine the computer equipment and storage devices at the defendant's offices to determine whether searches for the data sought could be performed on-site in a reasonable amount of time without jeopardizing the ability to preserve the data. 2010 WL 3529247, at *3. The concurring opinion criticized the government for failing to inform the magistrate judge the defendant had agreed to keep the data intact until a motion to quash a related subpoena could be ruled on as inconsistent with the government's duty of candor in presenting a warrant application. *Id.* at *14. McNamara-Harvey points to no similar evidence of a lack of candor in this case.

7

manuals and notes, and software in order to conduct an off-site search for electronic copies of the items listed above," over the defendant's objection the warrant was a general warrant. 307 F.3d at 149; *see also United States v. Fumo*, No. 06-319, 2007 WL 3232112, at *6 (E.D. Pa. Oct. 30, 2007) ("[T]he government may open and briefly examine each computer file to determine whether it is within the description recited in the warrant."). McNamara-Harvey's contention the warrant was an improper general warrant is thus without merit.

In addition to challenging the search warrant as a general warrant, McNamara-Harvey argues paragraphs two and four of Attachment A—which authorize seizure of certain records "pertaining to any intention to commit violence against any person or entity based on that person or entity's race, religion, ethnic decent or place of birth regardless of their location"—are not supported by probable cause. Specifically, McNamara-Harvey argues, because he had a First Amendment right to possess the pro-Palestinian/anti-Israeli literature found among the personal possessions he left at the GSK garage,[3] those items do not give rise to probable cause evidence of a crime would be found on the Laptop.

The Government, however, did not rely solely on this literature to establish probable cause to search for items enumerated in paragraphs two and four. Rather, as set forth in Special Agent O'Brien's Affidavit, the Government also relied on a tip from a concerned citizen who alerted the FBI McNamara-Harvey was using a computer to post increasingly radical pro-Palestinian/anti-Israeli messages and videos on his Facebook page, claimed he wanted to start a riot, and posted he quit his job for "the cause." O'Brien Aff. ¶ 8. The Government also noted during his interview with the FBI

---

[3] Such literature included materials published by the American Friends Service Committee, Amnesty International, and Human Rights Watch.

on December 23, 2009, McNamara-Harvey conceded he posted content on his Facebook page which some people would find disturbing and/or extremist in nature. The Government thus had a basis independent of the literature found among McNamara-Harvey's belongings to conclude he had an intent to commit violence against a "person or entity based on that person or entity's race, religion, ethnic decent or place of birth." Finally, the Government also relied on the discovery of an improvised incendiary device at GSK in close proximity to the area where McNamara-Harvey was found sleeping and video surveillance showing McNamara-Harvey carrying the same type of beer bottle as the bottle used for the improvised incendiary device. Taken together, these facts provide a substantial basis for a fair probability that evidence McNamara-Harvey had committed a violation of the Anti-Riot Act, 18 U.S.C. § 2101, as well as the other statutes referenced in the Affidavit, would be found on the Laptop. *See United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) ("[A] reviewing court is to uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found."). Moreover, even if probable cause was lacking as to the records described in paragraphs two and four of Attachment A, the Court cannot conclude the Affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Hodge*, 246 F.3d at 308 (internal quotation marks and citation omitted).

Accordingly, McNamara-Harvey's Motion to Suppress Physical Evidence is denied.

BY THE COURT:


    /s/ Juan R. Sánchez
Juan R. Sánchez, J.